UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MICHAEL STARR,<br><br>    Plaintiff,<br><br>vs.<br><br>MGM MIRAGE, a Delaware Corporation; et al.,<br><br>    Defendants. | 2:06-cv-00616-RLH-RJJ<br><br>**O R D E R** |

  This matter was referred to the undersigned Magistrate Judge on Plaintiff, Michael Starr's Application to Conduct Discovery (#31). The Court has considered the Application (#31), The defendants' Response (#37), and Plaintiff's Reply (#38).

## **BACKGROUND**

  On June 18, 1998, Circus Circus Enterprises established a Supplemental Executive Retirement Plan (SERP) for its executive employees. The SERP was initially named the Circus Circus Enterprises, Inc. Supplemental Executive Retirement Plan and subsequently the name was changed to the Mandalay Resort Group Supplemental Executive Retirement Plan. On January 19, 1999, Starr was notified that as a key employee he was eligible to participate in the SERP. Starr executed the required documents and became a plan participant on January 29, 1999. When Mandalay Resort Group and MGM Mirage (MGM) merged, Starr was notified on November 29, 2004, prior to the merger, of the optional forms of benefits available under the SERP and

1  informed that he would receive the benefits he was entitled to under the plan consistent with his
2  elected optional form of benefits.  Starr elected to receive his benefits in the form of an annuity
3  for 20 years during his lifetime commencing at the age of 55.
4       Subsequently, MGM decided to terminate the SERP and to pay Starr his benefits in a
5  lump sum payment.  Starr seeks limited discovery on MGM's decision to make a lump sum
6  payment in lieu of the benefits in the form he selected, and MGM's calculation of the lump sum
7  payment.  The lump sum payment was calculated as of July 1, 2005, the date the SERP was
8  terminated.  On July 1, 2005, MGM made a lump-sum payment to Starr in the amount of
9  $1,464,663.00.  On September 6, 2005, Starr returned the check, number 0055188, to MGM with
10 a letter demanding that MGM comply with its contractual obligations under the terms of the
11 SERP.  MGM denied Starr's request for an annuity on July 21, 2006.
12      This case was initially filed in the Eight Judicial District Court, Clark County, Nevada,
13 and was removed to this Court on May 17, 2006.  MGM filed a Motion to Dismiss which was
14 granted as to all claims with the exception of the 29 U.S.C. § 1132(a)(1)(B) claim.  Subsequently,
15 MGM filed a Motion for Summary Judgment attaching two documents (1) Details to Statement
16 of Termination Benefit Letter Dated June 15, 2005, and (2) Mandalay Resort Group Unanimous
17 Written Consent in Lieu of a Meeting of the Board of Directors.  Starr asserts that these
18 documents were never previously provided to him.  The documents detail the actual calculation
19 of the lump sum payment and state that each participant's accrued benefits were to be paid in the
20 form of a lump sum payment based on a discount rate of 6% and mortality assumptions using
21 110% of the RP 2000 Mortality Table (healthy males).  After MGM refused Starr's informal
22 request for discovery, Starr filed the instant application.  (#31).
23      Starr is requesting that this Court authorize discovery in order to obtain information on
24 four issues: (1) the calculation of the lump sum payment based upon the mortality tables
25 including: (a) disclosure of the actual mortality rate from RP 2000 Mortality Table used to
26 compute the present value factor of 12.6725254428493, (b) the life expectancy used for Starr, ©
27 the mathematical formula used to convert the mortality rate used into Starr's life expectancy, and
28 (d) the mathematical formula used to arrive at the present value factor of 12.6725254428493

given Starr's life expectancy and an interest rate of six percent; (2) the circumstances surrounding MGM's decision to adopt a discount rate of six percent in calculating the amount of the lump payment; (3) the circumstances surrounding and reasoning behind MGM's decision to pay a lump sum payment rather than purchasing an annuity for the benefit of Star; and (4) whether MGM considered the purchase of an annuity for Starr in order to provide him with the same benefits he elected, and whether MGM determined that the cost of such annuity would be greater than the amount of the lump sum payment MGM made to Starr.  MGM contends that discovery should not be permitted because the abuse of discretion standard applies in this case, thereby limiting the Court to review only the administrative record.

## **DISCUSSION**

"The beneficiary of an ERISA plan may bring a civil action against a plan administrator 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1471 (9th Cir. 1993).  If the plan vests the administrator of the plan with discretionary authority to determine eligibility for benefits, a district court reviews the administrator's determinations only for an abuse of discretion.  9 F.3d at 1471 (citations omitted).  The plan at issue states that "[t]he Administrative Committee may adopt such rules and regulations not inconsistent with the provisions of the Plan as it deems necessary or appropriate for the proper administration of the Plan and shall have the authority, in its sole and absolute discretion, to interpret and construe any provision of the Plan."  Mandalay Resort Group Supplemental Executive Retirement Plan § 8.2 Procedures.  Under this plan, the administrator is vested with discretionary authority to interpret the plan and determine eligibility for benefits and the amount of benefits.  Therefore, the standard of review is an abuse of discretion.  "[T]he abuse of discretion standard permits the district court to 'review only the evidence presented to the [plan] trustees.'" 9 F.3d at 1471, citing Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 482 (9th Cir. 1990).

A primary goal of ERISA was to provide a method for workers and beneficiaries to

      resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal.

9 F.3d at 1472.

"If, however, the plan administrator is also the insurer 'that conflict [of interest] must be weighed as a 'factor in determining whether there is an abuse of discretion.'" Tremain v. Bell, 196 F.3d 970, 976 (9th Cir. 1999), citing Snow v. Standard Ins. Co., 87 F.3d 327, 330 (9th Cir. 1996) (quoting Firestone Tire & Rubber Co. Et al. V. Bruch et al., 489 U.S. 101, 115 (1989)). This is due to the fact that "such an administrator has an incentive to pay as little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 966 (9th Cir. 2006). Here, the SERP was administered by an Administrative Committee. The Administrative Committee was the Board of Directors of Mandalay Resort Group. The Board of Directors revoked the prior Administrative Committee appointments and appointed itself as the Administrative Committee. See Mandalay Resort Group Unanimous Written Consent in Lieu of a Meeting of the Board of Directors, and Exhibit A, May 31, 2005. In this case, the insurer is also the plan administrator. Therefore, "[t]he district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." Abatie, 458 F.3d at 970, citing Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999).

      In this case, Starr is requesting discovery in order to show material, probative evidence that the fiduciary's self-interest caused the alleged breach of the administrator's fiduciary obligations to the beneficiary. Starr believes that the requested discovery may show that MGM benefitted from the payment of the lump sum. This would impact the Court's analysis of whether the administrator abused his discretion because "the existence of a conflict of interest is relevant to how a court conducts abuse of discretion review." Abatie, 458 F.3d at 965, citing Firestone, 489 U.S. at 115.

In this case, it is important to allow discovery into the decision making process of the plan administrator.

> A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might. . . . The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

Abatie, 458 F.3d at 968-69 (internal citations omitted).

The allegations that the Plan Administrator breached the fiduciary duties owed to Starr based on the fact that the Plan Administrator owed fiduciary duties to both Starr and the Rabbi trust is sufficient to allow the plaintiff to conduct discovery on issues of a conflict of interest. Amended Complaint (#8), at ¶ 33; See Medford v. Metro. Life Ins. Co., 244 F. Supp. 2d 1120, 1127 (D. Nev. 2003). Starr should be allowed limited discovery on whether there was a conflict of interest affecting his benefits determination, and to what extent. The requested discovery is relevant as to whether or not the plan administrator had a self-interest or was self-dealing.

The Ninth Circuit has stated that a "pattern of inconsistency and insufficiency in the plan administrator's reasons for terminating the appellant's benefits[,]" is "material evidence of its self-interested behavior . . . ." Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1130, 1147 (9th Cir. 2001), citing Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., 125 F.3d 794, 799 (9th Cir. 1997). Therefore, the circumstances surrounding the decision to pay the lump sum are relevant. Starr alleged in his complaint that the June 9, 2005, notice of the lump sum payment was devoid of any reason or explanation as to the basis for the termination of the SERP. Amended Complaint (#8), at ¶ 25. This Court has stated that "[a]n administrator's failure to provide reasons for its denial of benefits" is evidence of a conflict. Medford, 244 F. Supp. 2d at 1129, citing Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689 (7th Cir. 1992). Starr also alleged that MGM initially notified him of the decision to continue the

1  SERP in light of the merger. Amended Complaint (#8), at ¶ 20. "An administrator's change in
2  position without receipt of any new evidence" is likewise evidence of the fiduciary's self-interest.
3  Medford v. Metro. Life Ins. Co., 244 F. Supp. 2d 1120, 1129 (D. Nev. 2003), citing Regula, 266
4  F.3d at 1146 (citing, Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1569
5  (11th Cir. 1990)). The Ninth Circuit has also determined that "[a]n administrator's failure to
6  provide sufficient notice of the denial of the claim" can also be evidence of a conflict of interest.
7  Medford, 244 F. Supp. 2d at 1129, citing Friedrich v. Intel Corp., 181 F.3d 1105, 1110 (9th Cir.
8  1999). Starr also contends that the short notice given regarding the lump-sum payment is
9  evidence of malice. Amended Complaint (#8), at ¶ 32.

10  Although the plan administrator did not deny benefits entirely in this case, Starr is
11  alleging that his benefits were reduced. In determining whether the plan administrator abused its
12  discretion in determining to pay the lump sum payment and the amount of the payment, it is
13  necessary for the Court to be fully informed about the facts and circumstances surrounding that
14  decision including the extent of any conflict of interest that may have arisen. The calculation of
15  the lump sum payment, including the decision to adjust the payment by a six percent discount
16  rate, may show that the plan administrator was operating under a conflict of interest when
17  determining the type and amount of payment. The circumstances surrounding the decision to pay
18  the lump sum rather than purchasing an annuity for Starr, and whether or not the plan
19  administrator considered purchasing an annuity, may lead to evidence showing that the plan
20  administrator was self-dealing by paying the lump sum to save itself money. This is relevant
21  since "the court may consider evidence beyond that contained in the administrative record that
22  was before the plan administrator, to determine whether a conflict of interest exists that would
23  affect the appropriate level of judicial scrutiny." Abatie, 458 F.3d at 970, citing Tremain, 196
24  F.3d at 976-77. Therefore, Starr may conduct the requested discovery to determine whether or
25  not there is a conflict of interest, and if so, the extent of that conflict.

26
27  **ORDER**
28  Based on the foregoing, and good cause appearing therefore,

1    IT IS HEREBY ORDERED that the plaintiff's Application to Conduct Discovery (#31) is
2 **GRANTED**.
3    IT IS FURTHER ORDERED that the limited discovery authorized by this Order shall be
4 conducted on or before July 23, 2007.
5    DATED this 23rd day of May, 2007.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge